THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WASTE ACTION PROJECT,<br><br>        Plaintiff,<br><br>   v.<br><br>CITY OF SEATTLE,<br><br>        Defendants. | Case No. 2:23-cv-00756-RAJ<br><br>**CONSENT DECREE** |

## I.     STIPULATIONS

Plaintiff Waste Action Project ("WAP") filed a complaint against the City of Seattle ("Seattle") on May 22, 2023, alleging violations of the Clean Water Act, 33 U.S.C. § 1251 et seq., relating to discharges of stormwater from the City of Seattle Department of Public Utilities North Transfer Station ("NTS") in Seattle, Washington and alleged violations of the terms and conditions of Seattle's King County Industrial Waste Program Major Discharge Authorization ("Major Discharge Authorization") and seeking declaratory and injunctive relief, civil penalties, and attorney fees and costs.  Seattle denies the allegations contained in the sixty-day notice and complaint.

WAP and Seattle agree that settlement of these matters is in the best interest of the parties and the public, and that entry of this Consent Decree is the most appropriate means of resolving this action.

CONSENT DECREE
Case No. 2:23-cv-00756-RAJ   -  1

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

WAP and Seattle stipulate to the entry of this Consent Decree without trial, adjudication, or admission of any issues of fact or law regarding WAP's claims or allegations set forth in its complaint and its sixty-day notice.

DATED this 18th day of December, 2023.

CITY OF SEATTLE                         WASTE ACTION PROJECT

By _____    By _____
   Jeff Fowler                             Greg Wingard
Title:  Deputy Director of Solid Waste   Title:  Executive Director
        Seattle Public Utilities

## II.    ORDER AND DECREE

THIS MATTER came before the Court upon the Parties' Joint Motion for Entry of Consent Decree and the foregoing Stipulations of the parties.  Having considered the Stipulations and the promises set forth below, the Court hereby ORDERS, ADJUDGES, and DECREES as follows:

1.      This court has jurisdiction over the parties and subject matter of this action.

2.      Each signatory for the parties certifies for that party that he or she is authorized to enter into the agreements set forth below.

3.      This Consent Decree applies to and binds the parties and their successors and assigns.

4.      This Consent Decree applies to the operation by Seattle NTS Facility in Seattle, Washington (**the "Facility"**).

5.      This Consent Decree is a full and complete settlement of the claims in the Complaint and notice of intent to sue letter and all other claims known and unknown existing as of the date of entry of this Consent Decree that could be asserted under the Clean Water Act, 33 U.S.C. §§ 1251-

CONSENT DECREE
Case No. 2:23-cv-00756-RAJ  - 2

1387. These claims are released and dismissed with prejudice.  Enforcement of this decree is WAP's

exclusive remedy for any violation of its terms.

6.      This Consent Decree is a settlement of disputed facts and law. It is not an admission

or adjudication regarding any allegations by WAP in this case or of any fact or conclusion of law

related to those allegations, nor evidence of any wrongdoing on the part of Seattle.

7.      Seattle agrees to the following terms and conditions in full and complete satisfaction

of the claims covered by this Decree:

a.      Seattle will comply fully with all conditions of its Industrial Stormwater

General National Pollutant Discharge Elimination System Permit No. WAR303582 (the

"**NPDES Permit**") and any successor, modified, or replacement permit, and the Stormwater

Pollution Prevention Plan ("**SWPPP**") adopted thereunder, for the duration of the consent

decree.

b.      In addition to the sampling required under the ISGP, Seattle will collect 4

industrial stormwater samples from sample locations DP002 and DP004 by December 31,

2023, and will collect 6 industrial stormwater samples from sample locations DP002 and

DP004 by March 31, 2024, totaling 10 samples for DP002 and 10 samples for DP004.

Sample collection will be dependent on weather patterns.  The parties acknowledge and agree

that the number of samples collected each month may vary.  At Seattle's option, it may

collect additional stormwater samples above the 10 samples required by this provision.

c.      On a quarterly basis, all stormwater laboratory data obtained from these

sample events and the NPDES Permit sample events will be averaged for each parameter

sampled (except pH and visible oil sheen) and reported on the Facility's Discharge

Monitoring Report.  Seattle must follow the terms of the NPDES Permit when taking and

CONSENT DECREE
Case No. 2:23-cv-00756-RAJ   -  3

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

1
2
3

reporting the sample results, including conducting Level One Corrective Action requirements if the quarterly average for a parameter exceeds the Permit benchmark for that parameter in a quarter during the calendar year.

4
5
6
7
8
9
10
11
12
13

        d.     If the quarterly average concentration of laboratory data for a parameter exceeds the NPDES Permit benchmark in two quarters based on laboratory data from the first quarter of 2023 through the fourth quarter of 2023, then Seattle will implement a Level 2 corrective action for that parameter consistent with the NPDES Permit's requirements. Seattle must follow the terms of the NPDES Permit when taking and reporting the additional samples, including conducting Level 2 Corrective Action requirements if the quarterly average concentration for a parameter exceeds the Permit benchmark for that parameter for two quarters in a calendar year.

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

        e.     If the quarterly average concentration of laboratory data for a parameter exceeds the Permit benchmark for three quarters based on laboratory data from the first quarter of 2023 through the fourth quarter of 2023, then Seattle will implement a Level 3 corrective action for that parameter by working with a professional stormwater engineering firm to evaluate potential stormwater treatment alternatives to consistently reduce that parameter to below benchmarks.  Seattle's professional stormwater engineering firm will assist Seattle with stormwater evaluations through a treatability study to determine the appropriate treatment system improvement(s) and/or installation.  If treatment is required to be installed, Seattle will comply with the NPDES Permit to install treatment within the corrective action timeframe of the NPDES Permit; however, the parties agree that Seattle may request an extension from Ecology to allow sufficient time to comply with public contracting requirements, preparation of engineering reports, and acquisition of permits.

29

CONSENT DECREE
Case No. 2:23-cv-00756-RAJ   -  4

Seattle must follow the terms of the NPDES Permit when taking and reporting additional samples, including conducting Level 3 Corrective Action requirements if the quarterly average concentration of a parameter exceeds the benchmark for that parameter for three quarters in a calendar year.  Seattle may request an extension for a Level Three Corrective Action with Ecology in accordance with the Permit.

f.      If no Level 3 Corrective Action has been triggered based on the NPDES Permit and additional sampling collected under this provision in 2023, then in 2024, the six additional stormwater samples collected in the first quarter of 2024 shall be averaged into the first quarter stormwater data for 2024 and Seattle will comply with the level response under the NPDES Permit based on stormwater data collected under the NPDES Permit.  Seattle must follow the terms of the permit when taking and reporting the additional samples.

g.      For the duration of the consent decree, Seattle will provide copies of all quarterly sample lab reports; discharge monitoring reports; written (including electronic) documents to and from Ecology pursuant to the NPDES permit; and updated SWPPPs. Documentation will be forwarded to WAP on a quarterly basis no later than the twentieth day following the end of each calendar quarter.

h.      The parties acknowledge that Seattle is in the process of evaluating the existing flow meter that meters the volume of wastewater discharged from the Facility to the King County sanitary sewer.  The evaluation is ongoing and will continue through March 2024 (approximately six months) to account for seasonal weather and operational fluctuations that may be affecting the volume of wastewater discharged.  After the flow evaluation is complete, King County is expected to determine whether the Facility's Discharge Authorization needs to be revised.  Until King County makes that determination, it

CONSENT DECREE
Case No. 2:23-cv-00756-RAJ   -  5

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

is possible that the Facility may exceed the volume limits in its Discharge Authorization.  If King County determines that the Facility's Discharge Authorization needs to be revised, the Facility will accept King County's determination.

8.     No later than thirty (30) days after the entry of this Consent Decree, Seattle will pay an amount of SEVENTY THOUSAND DOLLARS ($70,000) to the Seattle Parks Foundation's 8th Avenue Gateway Project as described in **Exhibit A** to this Consent Decree, for an environmental benefit project benefiting water quality on the Duwamish River.  Payment will be made to the order of and delivered to the Seattle Parks Foundation, P.O. Box 3541, Seattle, WA 98124-3541. Payment shall include the following reference in a cover letter or on the check: "Consent Decree, Waste Action Project/City of Seattle Clean Water Act Settlement."  A copy of each check and cover letter, if any, shall be sent simultaneously to WAP.

9.     Seattle will pay WAP's reasonable attorney and expert fees and costs in the amount of TWENTY-EIGHT THOUSAND DOLLARS ($28,000.00).  Payment will be made within thirty (30) days of the entry of this decree by check payable and mailed to Smith & Lowney, PLLC, 2317 E. John Street, Seattle, Washington 98112, Attn: Richard Smith. This payment is full and complete satisfaction of any claims WAP may have under the Clean Water Act for fees and costs.

10.     A force majeure event is any event outside the reasonable control of Seattle that causes a delay in performing tasks required by this decree that cannot be cured by due diligence. Delay in performance of a task required by this decree caused by a force majeure event is not a failure to comply with the terms of this Decree, provided that Seattle notifies WAP of the event; the steps that Seattle will take to perform the task; the projected time that will be needed to complete the task; and the measures that have been taken or will be taken to prevent or minimize any impacts to stormwater quality resulting from delay in completing the task.

 Seattle will notify WAP of the occurrence of a force majeure event as soon as reasonably possible but, in any case, no later than ten (10) business days after the occurrence of the event.  In such event, the time for performance of the task will be extended for a reasonable period of time

CONSENT DECREE
Case No. 2:23-cv-00756-RAJ  - 6

following the force majeure event.

By way of example and not limitation, force majeure events include

      a.      Acts of God, war, insurrection, or civil disturbance;

      b.      Earthquakes, landslides, fire, floods;

      c.      Actions or inactions of third parties over which defendant has no control;

      d.      Restraint by court order or order of public authority;

      e.      Any permit or other approval sought by Seattle from a government authority to implement any of the actions required by this Consent Decree where such approval is not granted or is delayed, and where Seattle has timely and in good faith sought the permit or approval;

      f.      Strikes; and

      g.      Litigation, arbitration, or mediation that causes delay.

11.     This court retains jurisdiction over this matter. While this Decree remains in force, this case may be reopened without filing fee so that the parties may apply to the Court for any further order that may be necessary to enforce compliance with this decree or to resolve any dispute regarding the terms or conditions of this decree. In the event of a dispute regarding implementation of, or compliance with, this decree, the parties must first attempt to resolve the dispute by meeting to discuss the dispute and any suggested measures for resolving the dispute. Such a meeting should be held as soon as practical but must be held within thirty (30) days after notice of a request for such a meeting to the other party and its counsel of record.  If no resolution is reached at that meeting or within thirty (30) days of the notice, whichever occurs first, unless extended by mutual written agreement of the parties, either party may file a motion with this court to resolve the dispute. The provisions of section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), regarding awards of costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, shall apply to any proceedings seeking to enforce the terms and conditions of this

CONSENT DECREE
Case No. 2:23-cv-00756-RAJ   - 7

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

Consent Decree.

12.     The parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), no consent judgment can be entered in a Clean Water Act suit in which the United States is not a party prior to forty-five (45) days following the receipt of a copy of the proposed consent judgment by the U.S. Attorney General and the Administrator of the U.S. EPA.  Therefore, upon the signing of this Consent Decree by the parties, WAP shall serve copies of it upon the Administrator of the U.S. EPA and the Attorney General.

13.     This Consent Decree takes effect upon entry by the court. It terminates three years after entry by the court.

14.     All parties have participated in drafting this decree.

15.     This Consent Decree may be modified only upon the approval of the court.

16.     If for any reason the court should decline to approve this Consent Decree in the form presented, this Consent Decree is voidable at the discretion of either party.  The parties agree to continue negotiations in good faith in an attempt to cure any objection raised by the court to entry of this Consent Decree.

17.     Notifications required by this Consent Decree must be in writing.  A notice or other communication regarding this Consent Decree will be effective when received unless the notice or other communication is received after 5:00 p.m. on a business day, or on a day that is not a business day, then the notice will be deemed received at 9 a.m. on the next business day.  The sending party may use any of the following methods of delivery:  (1) personal delivery; (2) registered or certified mail, in each case return receipt requested and postage prepaid; (3) a nationally recognized overnight courier, with all fees prepaid; or (4) e-mail.  For a notice or other communication regarding this Consent Decree to be valid, it must be delivered to the receiving party at the addresses listed below or to any other address designated by the receiving party in a notice in accordance with this paragraph 17.

Smith & Lowney, p.l.l.c.
2317 East John St.
Seattle, Washington 98112
(206) 860-2883

**if to WAP:**

Waste Action Project
P.O. Box 9281
Covington, WA 98042
gwingard@earthlink.net

**and to:**

Smith & Lowney PLLC
2317 East John St.
Seattle, WA 98112
richard@smithandlowney.com

**if to Seattle**:

Jeff Fowler
Deputy Director of Solid Waste
Seattle Public Utilities
700 Fifth Avenue, Suite 5900
Seattle, WA 98104
Jeff.fowler@seattle.gov

Theresa Wagner
Senior Assistant City Attorney
Environmental Protection Section
Seattle City Attorney's Office
701 Fifth Avenue, Suite 2050
Seattle, WA 98104-7095
Theresa.wagner@seattle.gov

CONSENT DECREE
Case No. 2:23-cv-00756-RAJ   - 9

1   DATED this 15th day of February, 2024.

THE HONORABLE RICHARD A. JONES
UNITED STATES DISTRICT COURT JUDGE

CONSENT DECREE
Case No. 2:23-cv-00756-RAJ   - 10

# EXHIBIT A



December 13, 2023

*Via EMAIL*
Greg Wingard, Executive Director
Waste Action Project

Re: Waste Action Project v. City of Seattle (W.D. Wash.), Case No.: 2:23-cv-00756-RAJ

Dear Mr. Wingard,

This letter is to follow up on your request for information regarding the proposed Supplemental Environmental Project for the above-referenced case.  The Seattle Parks Foundation is a non-profit corporation recognized under Section 501c3 of the United States Internal Revenue Code and serves as fiscal sponsor for the Georgetown Open Space Committee who is the resident group engaged in the work at Gateway Park N. Seattle Parks Foundation serves as fiscal sponsor to community-based groups working on parks and open space projects and does not engage in lobbying.

I have reviewed the proposed Consent Decree and can confirm we will spend any monies received only for the purposes specified in the proposed Consent Decree. No money received under the proposed Consent Decree will be used for political lobbying activities.  Following the expenditure of funds provided by the settlement we will submit a letter describing how the funds were spent.  I have included a project description on the next page.  Please let me know if you need further information.

Sincerely,

Michelle Benetua
Director of Strategic Partnerships and Programs
Seattle Parks Foundation
Michelle@seattleparksfoundation.org
1.206.607.0647

seattleparksfoundation.org                                                    PO Box 3541
206.332.9900                                                                   Seattle, WA 98124-3541

**Gateway Park N**

This proposal is to fund the next phase of Gateway Park N / 8th Ave S Street-End restoration project, currently in its 8th year being fiscally sponsored by Seattle Parks Foundation. The project has already laid important groundwork for environmental benefits and community enhancement, but substantially more work remains. The project was slated to advance the design through a year of coordination meetings with the public agencies who own the site in 2021 with the expectation that we would finalize permits, go to bid, hire contractors, and build out the design in phases. However, Department of Ecology noted that there might be soil contamination, and this led to a protracted process of the Port of Seattle developing a testing plan, a process to hire a contractor and finally a contractor to test the soil – this took most of 2022. In 2023, the public agencies created an interlocal agreement allowing Seattle Department of Transportation to lead the project, including the shoreline restoration work to be funded by the Port of Seattle. Additionally, for the past two years, the Georgetown Youth Council has been building awareness about the site, learning about environmental justice, and engaging in restoration activities on site – including the design and creation of a temporary tree nursery.  During this time bioswales have been created and the road resurfaced to allow better drainage. The funds received will be applied to the next phase of the project, to be mapped out January 2024. Seattle Parks Foundation will not use any money it receives under the Consent Decree for lobbying purposes.

**Project Overview:**
Permitting, bidding and construction of a stormwater solution and human centered park at Gateway Park N / 8th Avenue S. Street End will build on over five years of engagement and design by a local community group, the Georgetown Open Space Committee, fiscally sponsored by the Seattle Parks Foundation. Together, we have built a partnership that includes three jurisdictions, four city agencies, non-profit organizations, and local industry to create a collaborative approach to crumbling public infrastructure in an area facing multiple environmental justice concerns. The initial phases have included natural green stormwater infrastructure, public sector advocacy, community leadership, and habitat restoration design that align with regional Sustainability Plans. Additional funding will allow us to finalize permits, go to bid and construct one to three phases of the design.

**Project Background:**
Since 2016, Duwamish Valley residents have championed a complex multi-agency shoreline park restoration and renovation project at Gateway Park North. The site is in an industrial corridor on the banks of the Lower Duwamish Waterway which was designated a Superfund site by the EPA in 2001. The project begins to address historic underinvestment and disempowerment in the Duwamish Valley, decades-old environmental justice issues, and a lack of shoreline access to Seattle's only river. Long term outcomes include critical habitat restoration, preservation of existing infrastructure, improved access to a safe shoreline, and trusted relationships that enable multiple jurisdictions and community members to work side by side to address environmental justice and habitat restoration projects along our critical shorelines.

The Duwamish Waterway is the name of the lower 12 miles of Washington state's Green River, a portion of which was declared a Superfund site in 2001 by the United States Environmental Protection Agency due to industrial contamination. It has been described as one of the most toxic Superfund sites in the nation. Despite

the industrialization of the river, it remains an important habitat for the thousands of salmon and trout that visit the marshes and estuaries each year to spawn. The Duwamish runs through the racially diverse and heavily industrialized neighborhoods of South Park and Georgetown. Susceptible to flooding, and increasingly vulnerable to sea-level rise, these residents have little access to the river. This community-led, multi-phased, multi-partnered project is one element of a larger plan to protect human life while improving the region's endangered and threatened wildlife habitats.

The project is innovative because it is:

a. Community led: the Georgetown Open Space Committee (which is made up of residents from the community) started engagement and preliminary design through an onsite Earth Day work party in 2017, with paid local musicians providing a festive mood. The project will continue to involve the community even during the final design phase. Strengthening the community's connection to a restored shoreline and the Duwamish by providing a safe public access point will enhance support for continued shoreline restoration.
b. Multi-partner: the team includes residents, nonprofit organizations, private industry, and local government agencies.
c. Leveraged: Permitting and construction at the site will leverage public investments and encourage participation from agencies. As such, the project offers a prototype for addressing coastal resilience in historically marginalized communities.

**Project support and engagement:**
The residents of zip code 98108, home to the Duwamish Valley neighborhoods of South Park and Georgetown, are exposed to multiple environmental justice concerns and include a high percentage of susceptible or vulnerable populations. In addition, they do not have access to and influence on decision makers that shape the future of their communities as other more affluent communities in the region do. This historic lack of representation has made it difficult or impossible for community members to advocate for their rights as residents with regards to safe, healthy, accessible green space and especially access to the River. The benefit to the community includes waterfront respite from the industry and noise of the neighborhood, which enhances public health and builds awareness about the river which will ultimately help improve the health of the river.

With a unique partnership among city agencies, the Port and nonprofit organizations, we are working across silos to create a cohesive and accessible access to the river that will improve water quality and create a functional place for the community to access their riverfront.